IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



RUSSELL ROBINSON,
    Petitioner,

v.                                             Civil No. 3:25cv589 (DJN)

WARDEN J. BIENEMY,
    Respondent.

**MEMORANDUM OPINION**

Russell Robinson, a federal prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1), challenging the execution of his sentence. Specifically, Mr. Robinson contends that:[1]

| | |
|---|---|
| Claim One | The Federal Bureau of Prisons ("FBOP" or "BOP") "is not adhering to the Sentencing Court's directives as to how to collect the $10,000 fine . . . ." (ECF No. 1 at 6.) The Bureau of Prisons "changed/overruled the Judgment in a Criminal Case, to make the payment of the fine to be $400.00 per month, rather than 10% of the gross funds EARNED IN THE FBOP." (*Id.* at 7.) |
| Claim Two | The FBOP is refusing to award Mr. Robinson credits under the Fair Sentencing Act ("FSA"). (*Id.*) Specifically, Mr. Robinson complains that "[t]he FBOP refused to calculate the FSA[] earned time credits [("ETCs")] from November 30, 2021 to December 6, 2021; then from June 5, 2023 to November 5, 2024 . . . ." (*Id.*) |

This matter is before the Court on Mr. Robinson's Motions for a Temporary Injunction (ECF Nos. 6, 11), and Respondent's Motion for Summary Judgment. (ECF No. 15.) For the reasons set forth below, the Motion for Summary Judgment (ECF No. 15) will be GRANTED and the Motions for a Temporary Injunction (ECF Nos. 6, 11) will be DENIED.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions. The Court omits any secondary citations from the parties' documents.

I.  **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Respondent submitted the declaration of Steven Lucas, a Unit Manager at the Federal Correctional Complex in Petersburg, Virginia (ECF No. 16-1 at 1–12), and records from Mr. Robinson's criminal case and from the FBOP. (*Id.* at 13–39). Mr. Robinson has responded and submitted numerous affidavits (*see, e.g.*, ECF Nos. 7-1, 25-1) as well as records from the BOP and his criminal proceedings. In light of the above submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment and the Motions for a Temporary Injunction.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Sentence and Fine Imposed

Mr. Robinson is serving a a 300-month sentence for conspiracy to possess with intent to distribute cocaine and for possession with intent to distribute cocaine, imposed by the United States District Court of the Virgin Islands ("Sentencing Court") on August 21, 2024. (ECF No. 16-1 ¶ 5.) Mr. Robinson is currently scheduled to be released from that sentence on September 14, 2044, via the earning of good conduct time.[2] (*Id.*)

---

[2]    Mr. Robinson "was housed at FDC Guaynabo [in Puerto Rico] while in pretrial status and for a few weeks following his sentencing as a 'holdover.'" (ECF No. 26 at 1.) After the imposition of Mr. Robinson's federal sentence on August 21, 2024,

> the BOP designated Mr. Robinson to the Federal Correctional Institution Medium in Coleman, Florida. He arrived at the facility in Coleman, Florida on November 6, 2024, and remained at that institution until May 13, 2025. Mr. Robinson was then designated to his current BOP facility, the Federal Correctional Institution Low in Petersburg, Virginia, and arrived at the institution on June 10, 2025.

(ECF No. 16-1 ¶ 6.)

As part of his sentence, the Sentencing Court, in its Judgment in a Criminal Case ("Judgment"), ordered Mr. Robinson to pay a $200.00 special assessment and a fine of $10,000.00. (*Id.* at 24.) The Sentencing Court further recommended to the BOP that Mr. Robinson participate in the Inmate Financial Responsibility Program ("IFRP") while incarcerated. (*Id.* at 20.) In the Schedule of Payments section of the Judgment, the Sentencing Court directed that:

> Defendant shall pay a fine in the amount of $10,000.00; payment shall be made in monthly installments of not less tha[n] 10% of the defendant's gross monthly income. Monies earned by the defendant would be used to satisfy the fine unless directed by the Court.

(*Id.* at 25.) During Mr. Robinson's sentencing hearing there was some confusion regarding exactly how the fine would be collected. (ECF No. 2-1 at 5.) The Sentencing Court stated that it would put on the Judgment: "Unless otherwise directed by the Court, **only money that he earns while in BOP** shall be used towards the fine." (*Id.* (emphasis added).)

B.  The IFRP

The IFRP is

> a voluntary program implemented by the BOP to encourage sentenced inmates to meet their legitimate financial obligations. Under the IFRP, BOP staff assist inmates in developing a financial plan to meet such existing obligations, including court-ordered special assessments, restitution, fines, and related fees. Inmates are responsible for making satisfactory progress in meeting their financial obligations under the IFRP, and those who demonstrate sufficient levels of responsibility are eligible for privileges ordinarily not available to inmates who refuse to participate in the IFRP or who fail to comply with its provisions. IFRP refusal or unsatisfactory progress can result in the loss of several benefits such as denial of furloughs, denial of certain work assignments, denial of community-based programs, and being placed in an opt out or non-earning status as it relates to First Step Act time credits.

(ECF No. 16-1 ¶ 8.) Critical to the issues before the Court are the rules concerning what inmate funds are to be used to pay fines:

> When an inmate is participating in the IFRP, the formula utilized by BOP staff to determine how much an inmate can pay towards their financial obligations per month considers, in part, the total funds deposited into an inmate's trust fund account for the prior six months. . . . This consideration typically includes institution resources, such as pay for an inmate work assignment, **and non-institutional community resources, such as money given to an inmate from family**.

(*Id.* ¶ 9 (emphasis added).)

### C. Discrepancy between the IFRP and the Sentencing Court's Pronouncements

Here,

> Unit Management staff at FCC Petersburg believe there is a discrepancy within Mr. Robinson's Judgment as it relates to his payment of the $10,000.00 fine, as the sentencing court recommended that Mr. Robinson participate in the IFRP during his incarceration, which typically includes consideration of institution resources *and* non-institutional community resources, but also indicated that only money earned by Mr. Robinson while in BOP custody should be considered.

(*Id.* ¶ 12.) Accordingly, in September of 2025, the staff at FCC Petersburg "contact[ed] Mr. Robinson's sentencing court and request[ed] written clarification of the Judgment as it relates to Mr. Robinson's payment of the $10,000.00 fine to ensure the BOP handles Mr. Robinson's payment of this financial obligation correctly." (*Id.* ¶ 13.)

BOP staff "placed Mr. Robinson on an IFRP exempt status while awaiting a response from the sentencing court." (*Id.* ¶ 14.)

As of November 14, 2025, (*id.* at 12),

> [BOP] staff have not received any written response from Mr. Robinson's sentencing court. However, staff were able to verbally speak with a clerk from the sentencing court on October 21, 2025. The clerk indicated the court does not intend to respond to the inquiry regarding Mr. Robinson's payment of the fine in writing but verbally stated that Mr. Robinson's gross income should be utilized to satisfy the obligation.

(*Id.* ¶ 15.) In light of the "continued discrepancy between Mr. Robinson's written Judgment and the sentencing court's verbal statements," the BOP has concluded that

5

> Mr. Robinson will remain on an IFRP exempt status until and if his sentencing court provides clarification in writing in the future such as a court order or Amended Judgment.
>
> Mr. Robinson is not penalized in any way for being placed on an IFRP exempt status and will not lose any benefits or privileges because of this exempt status such as the benefits noted above . . . . Mr. Robinson will also not be expected to pay any portion of the $10,000.00 fine through the IFRP while he is on exempt status.

(*Id.* ¶¶ 16, 17 (paragraph numbers omitted).)

### D.  Erroneous Collection of $65.00 from Mr. Robinson's Account

On August 8, 2025, prior to being placed on IFRP exempt status, the BOP inadvertently collected $65.00 from Mr. Robinson's prison account towards his fine. (*Id.* ¶¶ 18, 19.) This money was sent to the Sentencing Court. (*Id.* ¶ 18.) Shortly thereafter, BOP staff requested a refund from the Sentencing Court. (*Id.* ¶ 19.) "On September 3, 2025, court staff from the District of the Virgin Islands indicated they would return the funds." (*Id.*) As of November 14, 2025, the funds had not been returned to Mr. Robinson's account. (*Id.* ¶ 19; *id.* at 12.)

Accordingly, by Memorandum Order entered on January 23, 2026, the Court directed Respondent to inform the Court as to the current status of the refund. (ECF No. 23.) On January 29, 2026, Mr. Robinson informed the Court that the Sentencing Court refunded the $65.00 to his account on January 20, 2026. (ECF No. 24 at 1.) Respondent confirmed this fact. (ECF No. 26 at 1.)

### E.  First Step Act Time Credits

"Under the First Step Act ("FSA"), inmates who participate in and successfully complete evidence-based recidivism reduction ("EBRR") programming and/or productive activities ("PAs") can earn time credits toward early transfer to prerelease custody and/or early release to a term of supervised release." (ECF No. 16-1 ¶ 20.) The BOP recommends EBRRs and PAs "that specifically correspond with an inmate's individual need areas. An inmate's specific need areas

6

are identified through needs assessments, and the need areas assessed include anger/hostility, antisocial peers, cognitions, dyslexia, education, family/parenting, finance/poverty, medical, mental health, recreation/leisure/fitness, substance abuse, trauma, and work." (*Id.* ¶ 21.) "This needs assessment system is called the Standardized Prisoner Assessment for Reduction in Criminality or SPARC-13." (*Id.*)

"After the imposition of a federal sentence and once an inmate arrives at his designated facility for service of that sentence, the SPARC-13 assessment will be completed typically within 30 days of the inmate's arrival." (*Id.* ¶ 22.) "[I]f an inmate refuses to participate in or fails to complete any portion of the SPARC-13, he will be considered 'opted out' for the purpose of earning FSA time credits and thus will be in a non-earning status." (*Id.* ¶ 23.)

During his current federal sentence, Mr. Robinson "has refused to complete the family/parenting portion of the SPARC-13 and thus is in an 'opt out' or non-earning status as it relates to FSA time credits." (*Id.* ¶ 24.)

BOP staff "have informed Mr. Robinson that he must complete the family/parenting questionnaire to 'opt in' to earning FSA time credits" and arranged a time for him to so. (ECF No. 16-1 ¶ 26.) Mr. Robinson initially agreed to this opportunity, but when the time came, he refused to complete the questionnaire. (*Id.*) Thus, "Mr. Robinson remains in an 'opt out' status as it relates to earning FSA time credits." (*Id.*)

Mr. Robinson swears that he "did in fact take the BOP's Family/Parenting . . . SPARC-13 electronic survey, on the BOP's own TRULINCS INMATE COMPUTER, while [he] was [a] resident in Unit 3B of the Metropolitan Detention Center in Puerto Rico. (ECF No. 25-1 ¶ 1.) Nevertheless, the BOP has "no record of him completing the assessment **following** the imposition of his federal sentence." (ECF No. 16-1 ¶ 27 (emphasis added).)

## III. ANALYSIS

### A. Claim One and the IFRP

The Sentencing Court recommended that Mr. Robinson participate in the IFRP program. However, Mr. Robinson cannot participate in the program due to the Sentencing Court's statements limiting the funds available to pay Mr. Robinson's fines to those he earns, since the IFRP looks to *all* funds deposited into an inmate's account in calculating payments towards an inmate's court-imposed financial responsibilities. Given this discrepancy, the BOP has placed Mr. Robinson on IFRP exempt status. Mr. Robinson is not suffering any adverse consequences from his failure to participate in the IFRP program. The BOP has returned to Mr. Robinson the $65.00 erroneously collected from his prison account. Mr. Robinson remains free to submit voluntary payments towards his fine. Mr. Robinson fails to demonstrate that he is entitled to any further relief with respect to Claim One at this juncture. Accordingly, Claim One will be DISMISSED. The portion of Mr. Robinson's Motion for a Temporary Restraining Order that concerns the IFRP and the $65.00 debit from his account will be DENIED.

### B. Claim Two and the FSA

In Claim Two, Mr. Robinson contends that his rights under the FSA are being violated, because Respondent refuses to award him ETCs for activities he engaged in while in pretrial confinement and for placing him in opt-out status due to the fact that the BOP does not have a record of him completing the SPARC-13.[3] As explained below, Mr. Robinson is incorrect. Prior

---

[3] For example, Mr. Robinson states that "based on his productive activities, as set forth previously to this court, and the fact he did in fact take the surveys, [he] is and has been eligible for FSA/FTC credits from his time spent in MDC Guaynabo." (ECF No. 27 at 1 (citing *Jackson v. Doerer*, No. 5:24-01353 MRA (ADS), 2024 WL 4866812, at *8 (C.D. Cal. Oct. 28, 2024), *report and recommendation adopted*, No. 5:24-01353-ADS, 2024 WL 4719489 (C.D. Cal. Nov. 7, 2024)).

8

to the commencement of his federal sentence, Mr. Robinson possesses no entitlement to earned time credits under the FSA. Further, the BOP appropriately placed him in opt-out status based on his refusal to take or retake the SPARC-13.

"The First Step Act established a system of mandatory time-credits" allowing early release from incarceration for "individuals who participate in recidivism reduction programming, with limited exceptions." *Valladares v. Ray*, 130 F.4th 74, 77 (4th Cir. 2025). The FSA creates incentives for inmates to participate in EBRR programming and other productive activities by awards of earned time credits. 18 U.S.C. § 3632(d)(1)–(4). As part of the FSA, the Attorney General was directed to implement "a risk and needs assessment system" that will:

> (1) determine the recidivism risk of each prisoner **as part of the intake process**, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs . . . .

18 U.S.C. § 3632(a)(1)–(3) (emphasis added).

With respect to the award of earned time credits, the statute provides, in pertinent part:

> **d) Evidence-based recidivism reduction program incentives and productive activities rewards.**--The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:
> 
>     . . . .
>   **(4) Time Credits.--**
>   (A) **In general.**--A prisoner, except for an ineligible prisoner under subparagraph (D), who *successfully completes evidence-based recidivism reduction programming or productive activities*, shall earn time credits as follows:

9

> **(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> **(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> **(B) Availability.**--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed--
>
> . . . .
>
> **(ii)** *during official detention prior to the date that the prisoner's sentence commences under section 3585(a).*

18 U.S.C. § 3632(d) (emphasis added).

> In order to implement
>
> the FSA's directive that a "risk and needs assessment system" be developed to assess and "determine the recidivism risk of each prisoner as part of the intake process," *see* 18 U.S.C. § 3632(a), the BOP designed the "Standardized Prisoner Assessment for Reduction in Criminality," or "SPARC-13," to "identif[y] thirteen needs areas which are dynamic factors that can be targeted to reduce an inmate's risk of recidivism."

*Francoeur v. Warden of Fed. Med. Ctr. Devens*, No. CV 25-12381-MPK, 2025 WL 3158004, at *4 (D. Mass. Nov. 12, 2025) (alteration in original) (citation omitted). An inmate must be successfully participating in EBRR programs or PAs to earn FSA time credits. *Id.* (citing 28 C.F.R. § 523.41(c)(1).) As relevant here, the pertinent regulation states:

> (2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.
> . . . .
> (4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:
> . . . .

10

> > (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).
>
> (5)
> > . . . .
> > (iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate 'opts in' (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

28 C.F.R. § 523.41(c).

Guided by this statutory and regulatory framework, the Court now turns to Mr. Robinson's claims. By statute, Mr. Robinson is not eligible to earn sentence credits under the FSA "prior to the date that [his] sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a) provides that "[a] term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily . . . at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Mr. Robinson's sentence commenced on August 21, 2024, the date his sentence was imposed. (ECF No. 16-1 ¶ 5.) Thus, contrary to Mr. Robinson's assertion, he is not entitled to sentence credits under the FSA prior to August 21, 2024, for time spent in pretrial custody while preparing his unsuccessful criminal defense.

Even though Mr. Robinson was not prohibited from earning FSA sentence credits as of August 21, 2024, this does not mean that he actually "earns or is entitled to an award of FSA time credit as of that date." *Stevens v. Jacquez*, No. 3:23-CV-01482-AA, 2024 WL 3200546, at *4 (D. Or. June 25, 2024). This is so because an inmate must

> be assessed for the risk of recidivism **"as part of the intake process."** [18 U.S.C.] §§ 3621(h)(1)(A), 3632(a)(1) (the BOP must "determine the risk of recidivism of each prisoner as part of the intake process"). BOP must then "determine the type and amount of [EBRR] programming that is appropriate" for each [inmate] and "assign" appropriate EBRR programming and PAs based on its assessment of the

11

> [inmate's] "specific criminogenic needs." *Id.* § 3632(a)(3); *see also id.* § 3621(h)(1)(A). BOP must also try to "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." *Id.* § 3632(b)(2). As a practical matter, BOP cannot complete a comprehensive risk and needs assessment on the day of sentencing.

*Id.* (second alteration in original) (emphasis added). Here, Mr. Robinson insists that he took the SPARC-13 while at MDC Guaynabo. That is immaterial to the assessment of whether Mr. Robinson is participating in EBRRs or PAs for FSA credit. The statute and the BOP require inmates to complete the SPARC-13 after their sentencing, "as part of the intake process." 18 U.S.C. § 3632(a)(1). "[T]here is no record of [Mr. Robinson] completing the [SPARC-13] assessment following the imposition of his current federal sentence." (ECF No. 16-1 ¶ 27.)

Numerous courts have concluded that it is appropriate for the BOP to find that an inmate cannot successfully participate in EBRR programs or PAs to earn FSA time credits until they complete the SPARC-13 following sentencing. *See Francoeur*, 2025 WL 3158004, at *5 (approving of the conclusion that the "BOP cannot assign EBRR or productive activities based on a prisoner's specific criminogenic needs — which is required by the FSA — until BOP is able to assess those needs by reviewing the completed self-assessment surveys"); *Dane v. Bayless*, No. 5:24-CV-157, 2024 WL 5150683, at *5 (N.D. W. Va. Nov. 20, 2024) ("As in *Stevens*, the BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact, successfully participate in programming.") *report and recommendation adopted*, No. 5:24-CV-157, 2024 WL 5150650 (N.D. W. Va. Dec. 17, 2024); *Stevens*, 2024 WL 3200546, at *4 (same); *Harper v. FCI Waseca*, No. 23-CV-2502 (JRT/TNL), 2024 WL 3164981, at *6 (D. Minn. May 28, 2024) (approving of the decision to delay eligibility for FSA sentence credits until the completion of the risk assessments), *report and recommendation adopted sub nom.*

*Harper v. Warden of FCI Waseca*, No. CV 23-2502 (JRT/TNL), 2024 WL 3163730 (D. Minn. June 25, 2024).

The record reflects that Mr. Robinson had the opportunity to complete the SPARC-13, roughly two months after his sentencing, when he arrived at Federal Correctional Institution Medium in Coleman, Florida. (ECF No. 16-1 ¶ 6.) Thus, the Court need not confront the issue addressed by other courts where an inordinate delay in conducting an inmate's intake and assessments prevented the inmate from earning a significant amount of FSA time credits. *See Brenneman v. Salmonson*, No. 5:22CV7-RWS-JBB, 2025 WL 957216, at *6 (E.D. Tex. Feb. 25, 2025) (observing "the lengths of pre-arrival custody in those cases (approximately seven weeks for *Harper*, five weeks for *Stevens*, and eight weeks for *Dane*) were significantly less than Petitioner's 58 weeks of pre-arrival custody"), *report and recommendation adopted*, No. 5:22-CV-7-RWS-JBB, 2025 WL 914352 (E.D. Tex. Mar. 26, 2025); *Huihui v. Derr*, No. CV 22-00541 JAO-RT, 2023 WL 4086073, at *7 (D. Haw. June 20, 2023) ("This is not a situation in which the prisoner has been waiting for a month or two to be transferred. She has been waiting over seven months to start earning any credits."). Indeed, the record rather plainly reflects that the bar to Mr. Robinson's ability to earn sentence credits under FSA is not attributable to any administrative delay on the part of the BOP, but rather to his own intransigence in refusing to take or retake the family/parenting portion of the SPARC-13. Mr. Robinson fails to demonstrate that BOP has violated his rights by refusing to award his sentence credits under the FSA. Claim Two will be DISMISSED. The portion of the Motions for a Temporary Restraining Order pertaining to sentence credits under the FSA will be DENIED.

## IV.   CONCLUSION

Mr. Robinson's claims will be DISMISSED. The Motion for Summary Judgment (ECF No. 15) will be GRANTED. The Motion to Dismiss (ECF No. 14) will be DENIED as moot. Mr. Robinson's Motions for a Temporary Injunction (ECF Nos. 6, 11) will be DENIED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: March 5, 2026